Booth, Judge,
concurring:
The terms of the contract wherein provisions are made for the architects’ fees clearly indicate an intent to meet the circumstances of the architects’ employment and their relation to the contract work. It is first provided that the architects’ fees shall be five per cent, to be ascertained from the net amount of contracts awarded. This is followed directly by a provision for a preliminary payment of one-half of this fee upon the completion of the drawings and. specifications. There was a manifest purpose for making it so, for if the building was never completed the architects nevertheless were to be paid this preliminary sum. One-fifth of the fees was to be paid when the preliminary drawings were completed. At this time no contract for the building had been let. It could not be let until the preliminary plans and specifications had been first provided by the architects. Therefore, as a basis for determining how much the two and one-half per centum would amount to in gross, reference was provided for to the contracts for the building of the structure. If the building had never thereafter been built, this two and one-half per centum would have been paid. This was one contingency which had to be met, and was so met by these preliminary provisions in the contract. Again, the contract provides for another contingency — i. e., for monthly payments of the remaining two and one-half per centum upon the basis of the limit of cost, viz, $1,277,600, not the contract cost, and this shall continue to be the basis of monthly payments to be made to the architects “ until the actual cost of the work executed from the architects’ drawings can be determined.” Up to this point the contract is dealing with known and existent conditions, contingent because of the very nature of the services to be rendered by the plaintiffs and which must be provided for in justice to *229 the architects. There comes a time, however, when all com tingencies and conditions respecting the payment for the services of the architects are merged into an absolute certainty, and that time is when the work is completed and the actual cost of the building capable of definite ascertainment. So it was provided in the contract that upon the completion of the building the entire fee should finally rest upon the actual construction cost of the building. No mention is made in the final paragraph of contract cost, and inasmuch as the terms of the contract expressly cover every stage of construction progress, it seems to be a contract to pay the architects in the end five per centum of the actual cost of the building as shown on the books of the Supervising Architect’s Office. This is the usual and customary fee paid to architects, and the provisions of the contract 'respecting the same accord with the general and long-continued practices respecting contracts for the payment of the same. Supposing that in this case the officers of the Government had concluded to do a vast amount of work by day labor, which might have been done if a sufficient margin obtained between the limit of cost and contract price. Would it then be said that the cost of such work was not to be included in the computation of actual cost of the building, so as to form a basis for the allowance of plaintiffs’ fees? No written contract would have existed, but surely the item would be actual cost. The sum allowed by act of Congress to Butler, the contractor, was not a gratuity; quite the contrary — it was based on precise estimates made after personal inspection and certified to as items of actual construction work. It was in legal effect an increase in the limit of cost, and in the end made the building actually cost $1,382,004.14, whereas originally it was designed to limit the cost to $1,211,600. Certainly the mere fact that Butler might not have recovered this amount in court does not convert the sum allowed as actual cost into a gratuity. Congress every session sends many controversies to this court by special jurisdictional acts where the claimants are barred from judicial proceedings otherwise. In this instance, instead of waiving legal defenses in a court of justice, Congress referred the matter to the proper department of the Government to *230 investigate and determine the sum to be paid not in excess of the amount expressly limited in the bill. It did not give Butler any fixed sum.
Section 159 of the Judicial Code, providing for a statement in the petition of claimant “ of the action thereon in Congress,” is the continuation of an ancient provision appearing in the act of February 24, 1855, establishing this court. It was at the time an indispensable prerequisite, for the jurisdiction of the court embraced all claims “which may be referred to said court by either House of Congress.” We were at the time a commission, possessing no general jurisdiction. It was manifestly carried into the Judicial Code because of our jurisdiction under the Bowman and Tucker Acts, wherein congressional and departmental action upon the claim preferred is a vital and necessary prerequisite. It can have no possible relation to general jurisdictional cases, and can not be held to be even a necessary allegation in a petition filed under our general jurisdictional laws and should not be in the findings. It was never required in other cases. The right of petition to Congress for relief is constitutional, and the fact that Congress acted adversely upon a petition so made can not affect the rights of the plaintiffs in a subsequent legal proceeding to recover under the law what Congress in its legislative judgment saw fit to deny them. The plaintiffs’ case is not to be prejudiced because they in the first instance availed themselves of a constitutional right instead of resorting to the courts. Whatever argument they advanced, either in person or by attorney, in an effort to obtain congressional relief can not militate against them in the present suit, properly brought under an act giving this court jurisdiction of the subject matter. Previous statements as to matters of fact, of course, are available to impeach contrary ones on the cross-examination of witnesses, but whatever may have been the arguments advanced to persuade Congress to pass the bill and grant the relief requested have no place in this record, for this is not a congressional case. The plaintiffs may have been mistaken as to their legal rights or wrongly advised with respect thereto; they may have changed their minds, and whatever may have been the previous attitude in their *231 course before Congress, save as to material statements of actual facts going to the truth or falsity of the actual situation as it existed, they are not to be prejudiced thereby.
I therefore concur in the opinion of the court.